UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NATHAN HOLMES                                         CIVIL ACTION

VERSUS                                                NO. 12-1350

WARDEN LYNN COOPER                                    SECTION "J"(2)

# REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as procedurally barred.

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Nathan Holmes, is currently housed in the Avoyelles Correctional

Center in Cottonport, Louisiana.[2]  Holmes was charged initially by bill of information

in Orleans Parish on October 12, 2006, with one count of simple burglary of a vending

machine, but the bill was subsequently amended on November 27, 2006, to charge one

count of simple burglary of the structure of McMain High School on South Claiborne

Avenue in New Orleans.[3]

The Louisiana Fourth Circuit Court of Appeal summarized the facts of Holmes's

case as follows:

> On the morning of Sunday, July 9, 2006, Officer Ernest Alex and his
> partner, Officer Floyd Jackson, received a call concerning a burglar alarm that
> was activated at McMain High School.  According to Officer Alex, they arrived
> at the school at approximately 6:10 a.m. and heard loud, banging noises
> emanating from within the school.  The noise was coming from the Nashville
> Avenue side of the school.  Peering through a window on the basement/first floor
> on that side of the school, the officers saw a man (later identified as Mr. Holmes)
> battering the vending machines located in the basement of the school.  Although
> the sun was just coming out, Officer Alex testified that they were able to see Mr.
> Holmes because the lights were on in the basement.  Officer Alex further testified
> that he could not make out the object that Mr. Holmes used to get into the vending
> machines; however, he said it appeared to be a "heavy metal object."  Officer
> Alex further testified that when they first arrived and saw Mr. Holmes trying to
> break into the vending machines, his back was to them.  However, Mr. Holmes
> was constantly moving between several vending machines, and the officers were
> able to see Mr. Holmes' face when he turned.
> The officers called for backup units and a canine unit.  While they waited
> for the backup units to arrive, the officers continued to watch Mr. Holmes.  When
> the backup units arrived, the officers stationed themselves at each corner of the
> large high school so that they could see all the exit doors.  As the canine unit was

---

[2]Rec. Doc. No. 3, Petition at p. 1.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 10/12/06, as amended 11/27/06.

preparing to enter the building, Officer Alex and his partner walked toward the door on the Nashville side of the school. The door opened, and Mr. Holmes exited the door carrying a plastic bag. When he saw the police officers, Mr. Holmes dropped the bag and immediately surrendered. He was arrested without incident. At that time, Mr. Holmes told the officers not to let the dog bite him. He also told the officers that the reason he was breaking in was that he was trying to feed his family. The officers found paper currency on Mr. Holmes' person and coins in the bag he was carrying. The currency the officers seized from Mr. Holmes totaled about $300.00. Officer Alex identified photographs taken at the scene that showed the seized currency and the damaged vending machines. After Mr. Holmes was arrested, the search dog entered the school; no one else was found inside. At this time, Officer Alex also entered the school and learned that the rear door to the auditorium was unchained.

Michelle Simms, the head custodian at McMain at the time of the burglary, testified that between 5:55 and 6:00 a.m. on July 9, 2006, she received a call from the security company for the school. The security company informed her that a motion detector on the first floor/basement area of the school had sent a silent alarm. When she arrived at the school, police officers were stationed on the four corners around the school and a canine unit was present. She told the officers that she had the keys to all of the doors and gave them her set of keys. At that point, she heard an interior door bang and saw Mr. Holmes walk out the door on the Nashville side of the school. She testified that he dropped the bag of coins and stated to the officers: "Don't let the dog bite me." He also stated to the officers that he was stealing to feed his family. Ms. Simms testified that later she went inside the school and found that the vending machines had been damaged and that the auditorium door, which is normally chained, had been pried open. The next day Ms. Simms found a crowbar sitting on top of the milk machine in the cafeteria; she gave the crowbar to the police officer assigned to the school. Ms. Simms identified photographs of the damaged vending machines, which she indicated had been moved. She also identified the plastic bag Mr. Holmes was carrying when he exited the school as "the bag that was on the garbage can located in the basement where the kids would put the trash in after they'd go to the snack machine."

At trial, Ms. Simms identified Mr. Holmes as the man that she saw walk out of the school. Ms. Simms testified that the first time she saw Mr. Holmes was on the day of the crime. She further testified that he did not have permission to be inside the school that morning. On cross-examination, Ms. Simms admitted that she did not actually see anyone damaging the machines.

Mr. Holmes was the only defense witness. Testifying in his own defense, he denied taking money from the vending machines or even being inside the school that morning. He insisted that he was arrested about two or three blocks away from the school and that the officers brought him to the school. According to Mr. Holmes, the officers went in the school and came out with some money.

Mr. Holmes further testified that on the morning of July 9, 2006, he had gone to the area of Palmetto Street and South Carrollton Avenue to find a man named James who had offered him work gutting houses. Although he was unsure of James' last name or address, he knew that James lived on Palmetto Street and drove a black Ford truck. Mr. Holmes testified that he walked from Carrollton Avenue and Palmetto Street until he came to South Claiborne Avenue. Because he was unable to find James' house or his truck, he decided to walk home. While en route home, he was stopped by police officers in the area on South Claiborne Avenue where Tulane Stadium formerly was located, which is a few blocks from McMain. At that point, the officers arrested him and took him to the school. Mr. Holmes testified that the only statement he made to the officers was, as Ms. Simms testified, "please don't let this dog bite me." He explained that the dog was in a rage. Mr. Holmes also testified that the only thing the officers took out of his pocket were his keys and a box of hot tamales candies. Mr. Holmes admitted having four prior convictions: (i) a 1992 conviction for illegal use of a weapon, (ii) a 2003 conviction for possession of crack cocaine, (iii) a 1988 conviction for possession of stolen property, and (iv) a 1986 conviction for possession of phencyclidine ("PCP"). He pled guilty in all those prior cases except for the 1988 conviction.

State Record Vol. 1 of 3, Opinion, State v. Holmes, Case No. 2007-KA-1580 (La. App. 4th Cir. May 28, 2008) (footnote omitted).

On February 7, 2007, Holmes was tried and found guilty as charged by a jury.[4] Holmes was then charged as a multiple offender under the state habitual offender statute, and after a hearing on July 5, 2007, the state trial court found that Holmes was a multiple offender and sentenced him to 30 years in prison.[5]

Holmes timely pursued a direct appeal in the Louisiana Fourth Circuit, where he claimed that (1) the evidence was insufficient to support the "unauthorized entry" element of the offense for which he was convicted, and (2) the multiple offender bill of

---

[4]St. Rec. Vol. 1 of 3, Minute Entry, 2/7/07; Verdict Form, 2/7/07, Case No. 467-136 "F," Orleans Parish Criminal District Court.

[5]St. Rec. Vol. 1 of 3, Multiple Offender Bills of Information; Sentence of the Court, 7/5/07.

information used by the State to enhance his sentence did not give proper notice of his prior convictions.[6] The Fourth Circuit affirmed Holmes's conviction and sentence on May 28, 2008, finding no merit in his appeal issues.[7]

Holmes's conviction became final on June 27, 2008, thirty (30) days after the Louisiana Fourth Circuit's ruling, when he did not seek rehearing or timely review in the Louisiana Supreme Court.[8] Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

More than three months later, in October 2008, without first obtaining leave to file an out-of-time appeal, Holmes submitted an apparently untimely writ application to the Louisiana Supreme Court seeking review of the lower courts' conviction and affirmance.[9] In a letter to Holmes dated November 18, 2008, the Louisiana Supreme Court's clerk of court advised Holmes that, although the pleadings were received and filed on that date, they had been post-marked October 15, 2008.[10] In addition, the certification on the last page of his writ application signed and dated by hand by Holmes bears the date October

---

[6]St. Rec. Vol. 2 of 3, Original Brief on Behalf of Nathan Holmes 1/18/08.

[7]St. Rec. Vol. 1 of 3, Opinion, State v. Holmes, Case No. 2007-KA-1580 (La. App. 4th Cir. 5/28/08).

[8]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a), Holmes had 30 days from issuance of the Louisiana Fourth Circuit's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

[9]St. Rec. Vol. 2 of 3, La. S. Ct. Writ Application, 2008-KH-2751, 10/15/08.

[10]St. Rec. Vol. 1 of 3, Letter of John Tarlton Olivier to Nathan Holmes, 11/18/08.

15, 2008, establishing that as the earliest date on which Holmes could have placed the writ application in the mail for submission to the court.[11] The Louisiana Supreme Court denied Holmes's application on September 25, 2009, in a single-word order.[12]

Six (6) months later, Holmes signed and dated an application to the state trial court for post-conviction relief. Holmes asserted that he was denied effective assistance of counsel when his counsel failed to challenge his 1988 guilty plea that was used in his habitual offender adjudication.[13] On October 20, 2010, the state trial court denied the post-conviction application as untimely under Louisiana Code of Criminal Procedure article 930.8.[14]

The Louisiana Fourth Circuit denied Holmes's related writ application concerning this application for post-conviction review on December 21, 2010.[15] However, the appellate court agreed with Holmes that the state trial court "erred by denying his application for post-conviction relief as untimely pursuant to La. C. Cr. P. art. 930.8."[16]

---

[11]St. Rec. Vol. 2 of 3, "Writ of Certiorari and Review . . . Original Application on Behalf of Petitioner - Nathan Holmes, La. S. Ct. Case No. 08-KH-2751.

[12]St. Rec. Vol. 2 of 3, La. S. Ct. Order, 2008-KH-2751, 9/25/09; State v. Holmes, 18 So.3d 86 (La. 2009).

[13]St. Rec. Vol. 1 of 3, Application for Post-Conviction Relief, Orleans Parish Criminal District Court Case No. 467-136 "F," signed and dated 3/30/10, file-stamped May 18, 2010.

[14]St. Rec. Vol. 3 of 3, Judgment, Orleans Parish Criminal District Court Case No. 467-136 "F," 10/20/10.

[15]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2010-K-1602, 12/21/10.

[16]Id. at p.1.

In doing so, the state appellate court specifically found that "the date [Holmes's] conviction became final [was] on September 25, 2009."[17] The court concluded, however, that although his post-conviction application had been timely filed, Holmes was not entitled to relief for other state law procedural reasons, citing State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[18] The Louisiana Supreme Court denied Holmes's subsequent writ application about a year later, on December 2, 2011, citing state law procedural grounds, specifically La. Code Crim. P. art. 930.3; State v. Thomas, 19 So.3d 466 (La. 2009); and Melinie.[19]

At all three levels of his state court post-conviction proceedings, Holmes asserted essentially the same claim that he makes in the federal habeas petition now pending in this court, i.e., that his trial counsel was constitutionally ineffective in failing to challenge the validity of his 1988 guilty plea that was used to enhance his sentence under the state habitual offender statute.[20]

---

[17]Id.

[18]Id.

[19]State ex rel. Holmes v. State, 76 So.3d 1166 (La. 2011); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2011-KH-0220, 12/2/11.

[20]State Rec. Vol. 1 of 3, Petition for Post-Conviction Relief, Orl. P. Cr. D. Ct. Case No. 467-136 at p. 4, 3/30/10; State Rec. Vol. 2 of 3, "Application for Writs," La. App. 4th Cir. Case No. 2010-K-1602, 11/17/10; "Writ of Certiorari and Review," La. S. Ct. Case No. 11-KH-0220, signed 1/25/11, filed 1/28/11.

## II.  FEDERAL HABEAS PETITION

On June 8, 2012, the clerk of this court filed Holmes's petition for federal habeas corpus relief in which Holmes asserted a single ground for relief:  He was denied effective assistance of counsel during his multiple offender hearing, and the state courts unconstitutionally barred his ineffective assistance claim during his post-conviction proceedings "simply because the error occurred at the defendant's sentencing hearing."[21]

The State filed a response in opposition to Holmes's petition, arguing only that the petition was not timely filed and must be dismissed as untimely.[22]

## III.  GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[23] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore

---

[21]Rec. Doc. No. 3 (Memorandum in Support of 2254 Petition for Writ of Habeas Corpus) at p. 4.

[22]Rec. Doc. No. 15. The State's response contains only a perfunctory assertion that Holmes's claim is substantively meritless in footnote 21 of its response.

[23]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

applies to Holmes's petition, which, for reasons discussed below, is deemed filed in this federal court on May 30, 2012.[24]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State's exclusive argument is that Holmes's federal petition was not timely filed in this court and must be dismissed for that reason. Although the State's argument appears correct based upon its counsel's seemingly correct view of the finality date of Holmes's conviction, it also appears that the state courts reached a different, though apparently erroneous, finding as to the date Holmes's conviction became final. As discussed below, because this court cannot amend the state court's finding in this regard, which was based exclusively on state law, I cannot accept the State's time-bar argument.

---

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Holmes's petition was filed by the clerk of this court on June 8, 2012, after the filing fee was received. Holmes's signature on the petition was dated May 30, 2012. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843. 847 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

IV.    STATUTE OF LIMITATIONS

The AEDPA requires that a habeas petitioner bring his Section 2254 petition in most cases within one year of the date his conviction became final.[25] Duncan v. Walker, 533 U.S. 167, 179-80 (2001).  It appears that Holmes's conviction became final under Louisiana law on June 27, 2008. That date was 30 days after the Louisiana Fourth Circuit's ruling addressing Holmes's direct appeal, when Holmes's conviction became final under the state law cited on page 5 above when he did not seek rehearing or timely review in the Louisiana Supreme Court.  Applying the apparently correct date of June 27, 2008 as the finality date of his conviction, Holmes's subsequent writ application to the Louisiana Supreme Court would have to be found untimely.  In that instance, the State's

---

[25]The statute of limitations provision of the AEDPA provides for other triggers that do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

timeliness calculation would be correct, and Holmes's federal habeas petition would have to be dismissed as time-barred.

The AEDPA is clear in providing for interruption of the one-year limitations period only for "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. <u>Flanagan</u>, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. <u>Duncan</u>, 533 U.S. at 175-78.

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" <u>including specifically timeliness</u>. <u>Williams v. Cain</u>, 217 F.3d 303, 306-07 (5th Cir. 2000) (quoting <u>Villegas v. Johnson</u>, 184 F.3d 467, 470 (5th Cir. 1999)) (citing <u>Smith v. Ward</u>, 209 F.3d 383, 384-85 (5th Cir. 2000)); <u>see also</u> <u>Pace v. Guglielmo</u>, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).") (internal quotation omitted).

In Holmes's case, however, the Louisiana state appellate court has clearly ruled that "the date [Holmes's] conviction became final [was] on September 25, 2009."[26]  In doing so, the state court apparently overlooked its own rules concerning conviction finality and the untimeliness of Holmes's Louisiana Supreme Court writ application. Although this conclusion appears to be erroneous under Louisiana law, it is nevertheless binding on this court, sitting exclusively pursuant to its habeas corpus authority.  This is so because a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law); accord Molo v. Johnson, 207 F.3d 773, 776 n.9 (5th Cir. 2000); Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); West v. Johnson, 92 F.3d 1385, 1404 (5th Cir. 1996)); see also Hogue v. Johnson, 131 F.3d 466, 506 (5th Cir. 1997) (a disagreement as to state law is not cognizable on federal habeas review).  Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review questions of state law.  Estelle, 502 U.S. at 67-68; Gonzales v. Thaler, 643 F.3d 425, 429 (5th Cir. 2011); Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992).  Because the state court's determination of the finality date of Holmes's conviction is governed by state law and

---

[26]State Rec. Vol. 3 of 3, 4th Cir. Order, 2010-K-1602, 12/21/10.

does not involve consideration of any questions of federal or constitutional law, review of that finding is not proper on habeas review.

Under these circumstances, despite the apparent correctness of the State's calculation that the petition is time-barred, I cannot conclude that Holmes did not have a properly filed, pending state proceeding that tolled the AEDPA limitations period at all relevant times under 28 U.S.C. § 2244(d)(2). Because I cannot conclusively determine that this federal habeas corpus petition is time-barred, I do not recommend that it be dismissed for that reason.

V.     PROCEDURAL DEFAULT

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. Maples v. Thomas, 132 S. Ct. 912, 922 (2012); Walker v. Martin, 131 S. Ct. 1120, 1127 (2011); Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Roberts v. Thaler, 681 F.3d 597, 604 (5th Cir. 2012), cert. denied, 133 S. Ct. 529 (2012); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001); Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris v. Reed, 489 U.S. 255, 263 (1989); Roberts, 681 F.3d at 604; Finley, 243 F.3d at 218; Glover, 128 F.3d at 902.

Holmes's claim that he was denied effective assistance of counsel during his multiple offender hearing was raised at all three levels of his state applications for post-conviction relief. The claim was ultimately dismissed on state law procedural grounds by the Louisiana Supreme Court, which cited La. Code Crim. P. art. 930.3; State v. Thomas, 19 So.3d 466 (La. 2009); and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), all of which prohibit post-conviction review of sentencing errors, including ineffective assistance of counsel during sentencing. The Louisiana Supreme Court therefore denied relief as to this claim on the bases that the application asserts a claim that should have been raised on direct appeal and was not; and that the application was subject to dismissal because it asserts a claim that is not cognizable on collateral review.

This decision of the Louisiana Supreme Court explicitly dismissing Holmes's claim on state law procedural grounds was the last reasoned decision on this claim by the state courts. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991). For the following reasons, the claims raised in that application that are also raised in this federal petition are procedurally barred and may not be addressed by this court.

The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. Nobles, 127 F.3d at 420. This court has discretion to raise procedural default sua sponte, provided that the petitioner has notice that the issue is being considered. Amos v. Thornton, 646 F.3d 199, 203 n.4 (5th Cir.), cert. denied, 132 S. Ct. 773 (2011) (citing Prieto v. Quarterman, 456 F.3d 511, 518 (5th Cir. 2006); Fisher v. Texas, 169 F.3d 295, 301 (5th Cir. 1999)); Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998). Although the State did not address the issue of procedural default in its response, I must address sua sponte the procedural default of Holmes's claim before determining whether the merits of the claim are properly before this court.

Accordingly, **petitioner is hereby specifically instructed that this report and recommendation is notice to him that this court is sua sponte raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report**. Prieto, 456 F.3d at 518; Magouirk, 144 F.3d at 359.

A. Independent and Adequate

For the foregoing state-imposed procedural bars to prevent review by this federal habeas court, the bars must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Roberts, 681 F.3d

at 604; Finley, 243 F.3d at 218; Amos, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed by the state courts and evenhandedly applied to the majority of similar claims.  Roberts, 681 F.3d at 604; Finley, 243 F.3d at 218; Glover, 128 F.3d at 902.

The Louisiana Supreme Court relied upon La. Code Crim. P. art. 930.3, State ex rel. Melinie and Thomas, indicating that Holmes's claim concerning the effectiveness of his counsel in the multiple offender adjudication and sentencing proceeding was barred from review because it was not cognizable in a post-conviction proceeding, after not having been raised on direct appeal.

This court has repeatedly held that State ex rel. Melinie, Thomas and Article 930.3 provide independent and adequate state grounds for dismissal, which bar review by the federal courts in a habeas corpus proceeding.  See, e.g., Cotton v. Cooper, No. 11-0231, 2011 WL 5025311, at *7 (E.D. La. Sept. 14, 2011), report & recommendation adopted, 2011 WL 5025295 (E.D. La. Oct. 21, 2011) (Africk, J.) (article 930.3 and State ex rel. Melinie are independent and adequate grounds); Richardson v. Cain, 2010 WL 1838642, *11 (E.D. La. Apr. 1, 2010) report & recommendation adopted, 2010 WL 1837924 (E.D. La. May 3, 2010) (Vance, J.) (same);  Mead v. Cain, No. 03-3058, 2010 WL 3488187, at *3 (E.D. La. Aug. 26, 2010) (Berrigan, J.), aff'd after certif. of appealability grt'd on other grounds, 438 F. App'x 341 (5th Cir. 2011) (citing State ex rel. Brown v. State, 870 So.2d 976, 977 (La. 2004)) (because Louisiana Supreme Court in Brown "clarif[ied] that

article 930.3 prohibits raising habitual offender sentences in post-conviction hearings," that state procedural ground is independent and adequate to bar habeas claim that counsel was ineffective in connection with a multiple offender adjudication); Neal v. Kaylo, No. 01-2211, 2001 WL 1195879 , at *4-5 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (article 930.3 and State ex rel. Melinie are independent and adequate); Leonard v. Hubert, No. 00-0511, 2001 WL 333123 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); Marshall v. Hubert, No. 00-0334, 2000 WL 1059820 (E.D. La. July 31, 2000) (Duval, J.) (same). Based on this authority, I find that the bar imposed under La. Code Crim. P. art. 930.3, Thomas and State ex rel. Melinie is also independent and adequate to bar review of the merits of Holmes's claims related to his multiple offender adjudication and representation.

   B.   Cause and Prejudice

A federal habeas petitioner may be excepted from the procedural default rule only if he "can establish cause for the default and actual prejudice as a result of the alleged violation of federal law, or that the failure to consider his claims would result in a fundamental miscarriage of justice because he is 'actually innocent' of the offense underlying his conviction or 'actually innocent' of the death penalty." Roberts, 681 F.3d at 604 (citing Schlup v. Delo, 513 U.S. 298, 326-27 (1995); Sawyer v. Whitley, 505 U.S. 333, 340 (1992); Williams v. Thaler, 602 F.3d 291, 307 (5th Cir.2010)); accord Finley,

243 F.3d at 220 (citing Coleman, 501 U.S. at 750; Murray v. Carrier, 477 U.S. 478, 485 (1986)).

"Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples, 132 S. Ct. at 922 (citing Coleman, 501 U.S. at 753; Murray, 477 U.S. at 488) (quotation omitted) (emphasis in original); accord Holland v. Anderson, 230 F. App'x. 374, 379 (5th Cir. 2007) (citing Bagwell v. Dretke, 372 F.3d 748, 756-57 (5th Cir. 2004)). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Murray, 477 U.S. at 486.

In this case, Holmes has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana Supreme Court. My review of the record does not support a finding that any factor external to the defense prevented Holmes from raising his claim in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State that prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle v. Isaac, 456 U.S. 107, 134 n.43 (1982)). Having failed to show an external, objective cause for his default, the court need not determine whether

prejudice existed, and Holmes has not alleged any actual prejudice. Roberts, 681 F.3d at 608 (citing Coleman, 501 U.S. at 750); Finley, 243 F.3d at 220 n.4; Ratcliff v. Estelle, 597 F.2d 474, 477 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Holmes's claim is therefore procedurally barred from review by this federal habeas corpus court. See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause for failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[27]

C.     Fundamental Miscarriage of Justice

Holmes may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Roberts, 681 F.3d at 604; Hogue, 131 F.3d at 497 (citing Sawyer, 505 U.S. at 339). To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Murray v. Quarterman, 243 F. App'x 51, 55 (5th Cir. 2007); Bagwell, 372 F.3d at 757.

---

[27]The Supreme Court vacated the Fifth Circuit's opinion on the limited ground that a court of appeals is not required to raise the procedural default argument sua sponte. Trest v. Whitley, 522 U.S. at 90.

The fundamental miscarriage of justice exception "'is limited to cases where the petitioner can make a persuasive showing that he is actually innocent of the charges against him.' . . . . Proving such a claim is 'daunting indeed,' requiring the petitioner to show, 'as a factual matter, that he did not commit the crime of conviction.'" McGowen v. Thaler, 675 F.3d 482, 489 (5th Cir.), cert. denied, 133 S. Ct. 647, 648 (2012) (quoting Finley, 243 F.3d at 220; Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir. 1999)) (internal quotation omitted). To satisfy the factual innocence standard, "petitioner 'must support his allegations with new, reliable evidence that was not presented at trial and must show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence."'" Id. at 500 (quoting Fairman, 188 F.3d at 644) (quoting Schlup, 513 U.S. at 327)). Thus, this standard requires an "'extraordinarily high' 'threshold showing.'" Id. at 503 (quoting Herrera v. Collins, 506 U.S. 390, 417 (1993)). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Murray, 243 F. App'x at 55; Bagwell, 372 F.3d at 757; Glover, 128 F.3d at 903.

Holmes does not present anything and the record contains nothing that suggests his actual innocence on the underlying conviction. He presents no evidence or argument of innocence that was not already presented to and resolved by the state courts. For these

reasons, Holmes has failed to overcome the procedural bar to his claim, which must be dismissed with prejudice for that reason.

      D.    <u>Effect of Martinez Decision</u>

Construing his arguments broadly, Holmes has alleged that it is unconstitutional for Louisiana law to prohibit post-conviction review of his Sixth Amendment claim that his counsel provided ineffective assistance during the multiple bill hearing and sentencing. His ineffective assistance claim was raised for the first time in his state application for post-conviction review and was eventually procedurally barred by the Louisiana Supreme Court under Louisiana Code of Criminal Procedure article 930.3, <u>State v. Thomas</u>, 19 So.3d 466 (La. 2009) and <u>State ex. rel Melinie v. State</u>, 665 So.2d 1172 (La. 1996), all of which prohibit post-conviction review of sentencing errors, including ineffective assistance of counsel during sentencing. The procedural bar imposed on Holmes's ineffective assistance of counsel claim is not in conflict with the recent United States Supreme Court holding in <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012).

In <u>Martinez</u>, the Supreme Court discussed the long-standing holding in <u>Coleman v. Thompson</u>, 501 U.S. 722, 752 (1991), that habeas petitioners have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel therefore does not excuse a procedural default. The Supreme Court carved out an exception to that rule in situations in which a state defendant is barred from

raising an ineffective assistance of <u>trial</u> counsel claim at the initial level of review for raising such a claim:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Martinez</u>, 132 S. Ct. at 1320.

The Supreme Court was careful to note that its ruling was limited to situations in which state law <u>bars</u> a defendant from raising an ineffective assistance of trial counsel claim on direct appeal, where he would have been entitled to counsel. <u>Id.</u> at 1319-20. The <u>Martinez</u> rule applies only to claims of ineffective assistance of counsel at trial that were procedurally defaulted and when there was lack of or ineffective assistance by counsel during initial collateral or post-conviction review. The Court defined an "initial-review collateral proceeding" as "the first designated proceeding for a prisoner to raise a claim of ineffective assistance at trial." <u>Id.</u> at 1315, 1317. The Court held that, in states where a claim of ineffective assistance of counsel at trial is <u>prohibited</u> from direct appellate review,[28] the Constitution would require assistance of counsel at the first level

---

[28]Contrary to the unfortunate wording by the Fifth Circuit in an unpublished opinion, <u>see</u> <u>Lindsey v. Cain</u>, 476 F. App'x 777, 778 (5th Cir. 2012) ("When a state, like Louisiana, requires that a prisoner raise an ineffective assistance of counsel claim on collateral review . . . ."), Louisiana does not strictly "bar" review of ineffective assistance of trial counsel claims on direct appeal. Rather,

> Louisiana, like Texas, allows a prisoner to raise ineffective assistance of counsel on direct appeal "when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal." <u>State v. Brashears</u>, 811 So.2d 985 (La. App. 5 Cir. 2002). <u>See also</u> <u>State v. Williams</u>, 738 So.2d 640, 651-52 (La. App.

of review of that claim in post-conviction proceedings before a procedural bar can be imposed by the state courts.  Id. at 1319-20.

The claim raised here by Holmes is one of ineffective assistance of counsel during the multiple offender proceeding and sentencing.  Although the Martinez Court did not specifically address a bar imposed upon a claim arising from a sentencing enhancement proceeding, it does not appear that Martinez would apply to Holmes's claim, for the following reasons.

The Supreme Court made clear that its holding in Martinez only applied when "the State barred the defendant from raising the claims on direct appeal," so that collateral post-conviction proceedings were the petitioner's first opportunity to present the ineffective assistance of trial counsel claim.  Id. at 1320.  Louisiana law, however, did not bar Holmes from raising on direct appeal his ineffective assistance of counsel claim during the habitual offender proceeding.  In fact, the opposite is true; Louisiana law required Holmes to assert on direct appeal his claim of ineffective assistance of counsel

5 Cir. 1999) ("Ineffective assistance of counsel claims are most appropriately addressed on application for post conviction relief, rather than on direct appeal, so as to afford the parties adequate opportunity to make a record for review.  However, when an ineffective assistance claim is properly raised by assignment of error on direct appeal and the appellate record contains sufficient evidence to evaluate the claim, the reviewing court may address the ineffective assistance claim in the interest of judicial economy.").

Ibarra v. Thaler, 687 F.3d 222, 230 (5th Cir. 2012) (Graves, J., concurring in part and dissenting in part); see also State v. Dauzart, 89 So.3d 1214, 1221 (La. App. 4th Cir. 2012) (citing State v. Peart, 621 So.2d 780 (La. 1993); State v. Truitt, 500 So.2d 355 (La. 1987)) ("Although claims of ineffective assistance of counsel are most appropriately addressed through an application for post-conviction relief rather than direct appeal, where the record contains sufficient evidence to decide the issue, an ineffective assistance of counsel claim may be addressed on direct appeal in the interest of judicial economy.").

during the habitual offender proceeding and sentencing or be faced with a bar to its review if raised in a post-conviction application.  State v. Nelson, 2010-KA-1445, 2011 WL 9165413, at *1 (La. App. 4th Cir. Apr. 27, 2011) (citing State ex rel. Melinie, 665 So.2d at 1172) (claim of ineffective assistance of counsel at sentencing is considered on direct appeal because it is not available on post-conviction review).

Under Louisiana's well-settled doctrine, La. Code Crim. P. art. 930.3 and State ex rel. Melinie and its progeny prohibit post-conviction review of challenges to sentencing errors, including those raising claims of ineffective assistance of counsel during sentencing.  Thomas, 19 So.3d at 466; see Dauzart, 89 So.3d at 1222 (alleged ineffective assistance of counsel for failure to object to the failure to file the multiple bill into the record "must be addressed on appeal because sentencing errors are not reviewable post-conviction"); State v. Jones, 80 So.3d 500, 502 (La. App. 2d Cir. 2011) (same); see also Wallace v. Cain, No. 06-11271, 2009 WL 3367052, at *14 (E.D. La. Oct. 15, 2009) (same as to claim of ineffective assistance of counsel during habitual offender proceeding).

Instead, Louisiana law requires that sentencing errors, including claims of ineffective assistance of counsel during sentencing, should be raised on direct appeal. State v. Cotton, 45 So.3d 1030, 1030 (La. 2010); Nelson, 2011 WL 9165413, at *1.  In Cotton, the Louisiana Supreme Court explained that, under Louisiana law, "an habitual offender adjudication . . . constitutes sentencing for purposes of Melinie and La.C.Cr.P.

art. 930.3, which provides no vehicle for post-conviction consideration of claims arising out of habitual offender proceedings, as opposed to direct appeal of the conviction and sentence." <u>Cotton</u>, 45 So.3d at 1030. The court reiterated that Louisiana law prohibits <u>post-conviction review</u> of habitual offender proceedings, including claims of ineffective assistance of counsel related to that proceeding. <u>Id</u>., at 1030-31. Citing Louisiana Code of Criminal Procedure article 912(C)(1), which provides for direct appeal of the judgment that imposes sentence, the court specifically indicated that such claims are appropriately considered on direct appeal. <u>Id.</u> at 1031.

Thus, under Louisiana law, direct appeal was Holmes's initial opportunity to raise his claim of ineffective assistance of counsel at the multiple bill proceeding. <u>See</u> <u>Cotton v. Cooper</u>, No. 11-0231, 2011 WL 5025311, at *11 (E.D. La. Sep. 14, 2011) (Moore, M.J.) ("Sentencing issues, including claims of ineffective assistance of counsel during sentencing, may be challenged in [Louisiana] state court via direct appeal."), <u>report & recommendation adopted</u>, 2011 WL 5025295, at *1 (E.D. La. Oct. 21, 2011) (Africk, J.); <u>Nelson</u>, 2011 WL 9165413, at *1 (claim of ineffective assistance of counsel at sentencing is to be considered on direct appeal because it is not available on post-conviction review); <u>State v. Smith</u>, 734 So.2d 826, 834-35 (La. App. 4th Cir. 1997) (addressing on direct appeal defendant's claim of sentencing-related ineffective assistance of counsel); <u>State v. Burns</u>, 723 So.2d 1013, 1016-17 (La. App. 4th Cir. 1998) (same). There was <u>no</u> state law prohibiting Holmes from raising his sentencing-related ineffective assistance

of counsel claim on direct appeal and, had he done so, consideration of the claim on federal habeas review would not have been barred. See, e.g., State v. Dudley, No. 2012-0640, 2012 WL 5383089, at *3-4 (La. App. 1st Cir. Nov. 2, 2012) (addressing on direct appeal merits of claim of ineffective assistance of counsel for counsel's failure to challenge validity of prior conviction at habitual offender adjudication); State v. Staden, No. 2011-1455, 2012 WL 1564592, at *11 (La. App. 1st Cir. May 3, 2012) (same); State v. Jones, 35 So.3d 1162, 1166-68 (La. App. 5th Cir. 2010) (same); State v. Jackson, 4 So.3d 131, 133-34 (La. App. 4th Cir. 2009) (same).

For these reasons, the Martinez ruling does not compromise or impact the procedural bar imposed upon Holmes's post-conviction claim for ineffective assistance of counsel during the multiple bill proceeding. Louisiana law was not a bar and indeed required Holmes to raise the claim on direct appeal, which he did not do. He also was represented by counsel on direct appeal and has not challenged his appellate counsel's performance in any court. See Edwards v. Carpenter, 529 U.S. 446, 452-54 (2000) (addressing claims of ineffective assistance of counsel as cause for procedural default).

The state post-conviction proceeding was not the "initial-review collateral proceeding" in which Holmes was required to raise his claim of ineffective assistance of counsel at the multiple bill proceeding. His ability to raise the claim on direct appeal precludes the equitable relief provided in Martinez. See Ibarra v. Thaler, 687 F.3d 222, 227 (5th Cir. 2012) (Martinez does not apply under Texas law, which allows direct

26

appeal of ineffective assistance of trial counsel); <u>Banks v. Workman</u>, 692 F.3d 1133, 1148 (10th Cir. 2012) (<u>Martinez</u> does not apply because Oklahoma law permits review of ineffective assistance of trial counsel claim on direct appeal).

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that the petition of Nathan Holmes for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as procedurally barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[29]

New Orleans, Louisiana, this ___22nd___ day of January, 2013.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[29]<u>Douglass</u> referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.